AUSA: Blake Hatlem    Telephone: (313) 226-9613
AO 106 (Rev. 04/10) Application for a Search Warrant   Special Agent:   Matthew Rummel, ATF   Telephone: (313) 202-3450

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
3011 HENDEE, JACKSON, MICHIGAN 49201 )
(More fully described in Attachment A) )
)

Case No.   Case: 2:20-mc-50313 - 1
Judge: Goldsmith, Mark A.
Filed: 02-26-2020 At 04:03 PM
IN RE: SEALED MATTER (CMC)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____ Eastern _____ District of _____ Michigan _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(3) | Possession of Firearm while being Unlawful User of a Controlled Substance |
| 18 U.S.C. § 922(a)(1)(A) | Dealing in Firearms Without a Federal Firearms License |

The application is based on these facts:

See attached AFFIDAVIT.

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Matthew Rummel, ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____ February 26, 2020 _____

_____
*Judge's signature*

City and state: _____ Detroit, MI _____

Hon. R. Steven Whalen, U. S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 3011 HENDEE, JACKSON, MICHIGAN | Case No. <br><br> UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Rummel, being sworn, depose and state the following:

### INTRODUCTION & AGENT BACKGROUND

1.      I submit this affidavit in support of the issuance of a search warrant pursuant to Federal Rule of Criminal Procedure 41 to search the following location, as particularly described in Attachment A, for the purpose of seizing evidence, fruits, and instrumentalities, as particularly described in Attachment B:

a.  3011 HENDEE, JACKSON, MICHIGAN (referred to herein as the **TARGET RESIDENCE**), for which I have probable cause to believe is a residence associated with Isaiah VALENTINE, and associated with his illegal possession of firearms.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since September 2014. I am currently assigned to the Detroit Field Division. Prior to joining the ATF, I was employed for approximately eight years as a State Parole Agent with the Michigan Department of Corrections. During that time, for approximately four years, I was

1

assigned to a multi-jurisdictional task force made up of federal, state, and local law enforcement agencies. I have participated in numerous investigations involving firearms, narcotics trafficking by armed individuals, robberies, assaults, homicides, and criminal street gangs. These investigations have resulted in the execution of numerous state and federal search and arrest warrants. I have a Bachelor's degree in criminal justice, and I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator School and ATF's Special Agent Basic Training school.

3.      The facts contained in this affidavit come from my personal observations, my training and experience, my review of documents and statements, and information obtained from other law enforcement and individuals with knowledge of this matter.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5.      The requested warrant is sought in connection with the ongoing investigation of Elijah VALENTINE, for the suspected violations, to include 18 U.S.C. § 922(g)(3) - Possession Of A Firearm While Being An Unlawful User Of A Controlled Substance; 26 U.S.C. §§ 5861 – Possession Of A Short Barreled

2

Rifle; and 18 U.S.C. § 922(a)(1)(A) – Engaging In The Business Of Dealing In Firearms Without A Federal Firearms License.

6.     On or about December 12, 2019, Isaiah VALENTINE came into the Jackson County Sheriff's Office (JCSO) to apply for a firearm purchase permit. JCSO Clerk Chelsea Literski made contact with VALENTINE, and could immediately smell a strong odor of marijuana emanating from VALENTINE. The odor was so strong that Literski could smell the marijuana scent through the thick glass separating them. At some point during the process, VALENTINE became irritated and said this was "fucking stupid" and that he owns "lots of guns". VALENTINE was informed that his request was pending further investigation at which time he became verbally combative and made statements such as, "You need to do this now!"

7.     Later, on or about December 12, 2019, VALENTINE returned to the JCSO and provided JCSO Clerk Chelsea Literski with his Michigan Concealed Pistol License (CPL) application, which required he be fingerprinted. During the encounter, Literski could smell marijuana on VALENTINE's breath and asked if he hung around people that smoked marijuana and if he smoked it. VALENTINE laughed and stated it was his "cologne" that she smelled.

8.     On December 17, 2019, the State of Michigan Department of Licensing and Regulatory Affairs (LARA), Michigan Medical Marijuana Program

(MMMP) provided certification that VALENTINE held a medical marijuana patient card for all of 2018 and part of 2019.  In my training and experience, "patient" cards are utilized by users of marijuana.

9.      On or about January 3, 2020, VALENTINE attempted to purchase a firearm from a Federal Firearms Licensee (FFL), Action Discount. In accordance with the Brady Law, an instant background check was submitted and VALENTINE was denied for being a federal controlled substance user. The sale and transfer was therefore denied.

10.     On January 17, 2020, VALENTINE attempted to purchase another firearm from Dunham's Sports FFL. The sale and transfer was again denied, after a Brady check was conducted.

11.     On February 21, 2020, I reviewed VALENTINES' publicly available Facebook Account, "isaiah.valentine.336".

12.     On or about February 2, 2020, the Facebook account associated with VALENTINE posted a comment, referencing the need to stop "smoking" so they could get a job.

13.     On or about February 14, 2020, the Facebook account associated with VALENTINE posted a message stating, "I have a couple firearms for sale if anyone interested".

14.     On or about February 18, 2020, the Facebook account associated with VALENTINE posted a picture of six (6) firearms on a bed, with the comment "Everything's got a price today lol". Numerous individuals commented, asking for prices. One individual stated, "MSG me prices and details". A screen capture of the post can be observed below (11a). From my training and experience, one of the firearms (red and black AR style, on the bottom of the picture) may be a short barrel rifle; based on its size in comparison to the other firearms and the stock that is affixed.



a.

15.    I have ascertained that the above-referenced social media account is associated with VALENTINE based on the username's similarity to VALENTINE's name and comparisons of known photographs of VALENTINE to photographs posted on the account, among other methods.

16.     Per Michigan State Police, VALENTINE currently has three firearms registered in his name, further described as:

    a.  Sturm Ruger, Model 57, 5.7 X 28 caliber pistol, registered on or about January 20, 2020

    b.  Europe American Arms Corp., Model Witness, 10mm, registered or about October 11, 2018

    c.  Glock, Model 32, .357 caliber, registered on or about October 5, 2018

17.     Per the Michigan State Police, VALENTINE's concealed weapons permit was revoked on January 21, 2020 and was therefore not valid.

18.     In January 2020, VALENTINE provided the Jackson County Sheriff Department pistol sale records (MSP form MI RI-060) for ten (10) firearms. At least four (4) firearms were purchased after January 21, 2020, the date VALENTINE's CPL was revoked. The dates of purchase included:

    a.  Three (3) firearms purchased on or about January 18, 2020

    b.  One (1) firearm purchased on or about January 20, 2020

    c.  Two (2) firearms purchased on or about January 21, 2020

    d.  One (1) firearm purchased on or about January 25, 2020

    e.  One (1) firearm purchased on or about January 26, 2020

    f.  One (1) firearm purchased on or about January 29, 2020

    g.  One (1) firearm purchased on or about January 31, 2020

19.     On February 20, 2020, the Jackson Police Department took a report of an alleged criminal sexual contact, involving VALENTINE. The sixteen-year-old victim and her mother reported the offense. The victim stated that, when she was fifteen, she was raped four times by VALENTINE. The assaults occurred between August 2019 and December 2019. The victim reported that in addition to the sexual assault, she was also physically assaulted by VALENTINE and was choked. The victim stated that on or about January 22, 2020, VALENTINE put a black pistol with a laser, to her head. The victim was in fear for her life and thought that she was going to be kidnapped. VALENTINE told the victim he was going to take her out of Jackson to marry her and have children. The victim has made efforts to avoid VALENTINE since January 22, 2020, but has observed him outside the **TARGET RESIDENCE**.

20.     Jackson Police investigators were also provided text message conversations between VALENTINE and the victim.

## **TARGET RESIDENCE**

21.     The victim reported to investigators that in August of 2019, she was inside the **TARGET RESIDENCE** with VALENTINE and observed firearms and illegal narcotics. The victim further stated VALENTINE keeps firearms and narcotics stored in a "hidden compartment" in the basement. The victim believed the residence is associated with VALENTINE's relative, possibly his sister.

8

22.     On February 24, 2020, I conducted surveillance of the **TARGET RESIDENCE**. At approximately 1:30 p.m., I observed VALENTINE, exit the front door, and enter a 2019 Hyundai Tucson, bearing Ohio plate GWD2305 and drive away. At approximately 2:10 p.m., VALENTINE returned and entered the front door. At approximately 2:14 p.m., VALENTINE again departed in the vehicle and drove away. At approximately 2:40 p.m., VALENTINE returned and again entered the residence. At approximately 2:45 p.m., VALENTINE again departed. It should be noted that the outside temperature was approximately 30 degrees, yet during these departures and returns, VALENTINE was observed wearing a short sleeve t-shirt.

23.     The 2019 Hyundai Tucson VALENTINE was observed driving was rented from Enterprise Leasing Company by Samantha Sajdak. A review of law enforcement databases indicated that Samantha Sajdak was a relative and associate of VALENTINE.

24.     Per Jackson County, the **TARGET RESIDENCE** is owned by James and Judith VALENTINE. A review of law enforcement databases indicated that James and Judith VALENTINE are relatives of VALENTINE.

<u>TRAINING AND EXPERIENCE REGARDING FIREARMS</u>

25.     Individuals who possess firearms often possess other items commonly used or acquired in connection with the possession of firearms.  Some of these

items include, but are not limited to: other firearms, firearm parts, ammunition, firearm receipts, firearms brochures or owner's manuals, records of sale or acquisition of firearms, firearms magazines, and holsters. Firearms are durable and non-perishable goods, which can be expected to remain in the individual's possession for extended periods of time. Firearms that are illegally obtained and/or possessed are difficult to replace. As such, individuals usually closely protect and maintain them.

## TRAINING & EXPERIENCE REGARDING CELL PHONES

26. Based on my training and experience, as well as the information provided above in paragraphs 13 and 14 that VALENTINE utilized social media to advertise firearms for sale, I know that persons involved in firearm possession, firearms trafficking and conspiratorial criminal activities often utilize cellular telephones to further their illegal activity. I am also aware that social media platforms are often accessed and utilized through cellular telephones. More specifically, I know that firearm traffickers use cellular telephones to further their objectives by:

     a. communicating with customers and co-conspirators by phone calls;

     b. communicating with customers and co-conspirators by talking and by sending e-mail messages, text messages, and messages through social media (*e.g.*, Facebook, Instagram, or Twitter);

    c.   storing contact information of customers and co-conspirators; and

    d.   taking photographs and recording videos of co-conspirators and

        contraband.

## CELLULAR PHONES, ELECTRONIC DEVICES AND FORENSIC ANALYSIS

Based on my training and experience, I know that a cellular phone, or cell phone, is a handheld wireless device used for voice and data communication through radio signals. Cell phones send signals through networks of transmitter/receivers, enabling communication with other cell phones or traditional "land line" telephones.  A cell phone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, cell phones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Cell phones may also include global positioning system ("GPS") technology for determining the location of the device.

27.    Based on my knowledge, training, and experience, I also know that electronic devices, including cell phones, can store information for long periods of

time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

32.     As described in Attachment B, this application seeks permission to search for records that might be found at the TARGET RESIDENCE in whatever form they are found.  One form in which the records might be found is data stored in the storage media of electronic devices, to include cell phones, computers, or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

33.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

34.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

35.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

36.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

37.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

38.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

39.    *Necessity of seizing or copying entire computers, cell phones, or storage media.*  In most cases, a thorough search of a premises for information

13

that might be stored on storage media often requires the seizure of the physical

storage media and later off-site review consistent with the warrant. In lieu of

removing storage media from the premises, it is sometimes possible to make an

image copy of storage media.  Generally speaking, imaging is the taking of a

complete electronic picture of the computer's data, including all hidden sectors

and deleted files.  Either seizure or imaging is often necessary to ensure the

accuracy and completeness of data recorded on the storage media, and to prevent

the loss of the data either from accidental or intentional destruction.

40.    *Nature of examination.*  Based on the foregoing, and consistent with

Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or

otherwise copying storage media that reasonably appear to contain some or all of

the evidence described in the warrant, and would authorize a later review of the

media or information consistent with the warrant.  The later review may require

techniques, including but not limited to computer-assisted scans of the entire

medium, that might expose many parts of a hard drive to human inspection in

order to determine whether it is evidence described by the warrant.

41.    To the extent any other people in addition to VALENTINE are at the

**TARGET RESIDENCE**, it is possible that the **TARGET RESIDENCE** will

contain storage media that are predominantly used, and perhaps owned, by

persons who are not suspected of a crime.  If it is nonetheless determined that

14

there is a fair probability that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## USE OF FINGERPRINT OR FACE ID TO UNLOCK CELL PHONE(S)

42.     The warrant I am applying for would permit law enforcement to compel VALENTINE to unlock a device in their possession (or otherwise connected to them) which is subject to seizure pursuant to this warrant using the device's biometric features. I seek this authority based on the following:

43.     I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

44.     If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user

can unlock the device by pressing the relevant finger to the device's Touch ID

sensor, which is found in the round button (often referred to as the "home" button)

located at the bottom center of the front of the device. The fingerprint sensors

found on devices produced by other manufacturers have different names but

operate similarly to Touch ID.

45.     If a device is equipped with a facial recognition feature, a user may

enable the ability to unlock the device through his or her face. For example, this

feature is available on certain Android devices and is called "Trusted Face."

During the Trusted Face registration process, the user holds the device in front of

his or her face. The device's front-facing camera then analyzes and records data

based on the user's facial characteristics. The device can then be unlocked if the

front-facing camera detects a face with characteristics that match those of the

registered face. Facial recognition features found on devices produced by other

manufacturers have different names but operate similarly to Trusted Face.

46.     In my training and experience, users of electronic devices often

enable the aforementioned biometric features because they are considered to be a

more convenient way to unlock a device than by entering a numeric or

alphanumeric passcode or password. Moreover, in some instances, biometric

features are considered to be a more secure way to protect a device's contents.

This is particularly true when the users of a device are engaged in criminal

activities and thus have a heightened concern about securing the contents of a device.

47.     As discussed in this affidavit, I have probable cause to believe that VALENTINE uses cell phones in connection with his criminal activities. The passcode or password that would unlock the device(s) subject to search under this warrant is/are not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

48.     I also know from my training and experience, as well as from information found in publicly available materials, including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 8 hours and the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event

law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

49.     Due to the foregoing, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) to the fingerprint scanner of any cell phone(s) found in the possession of (or otherwise connected to) VALENTINE and seized pursuant to this warrant; and/or (2) hold the device(s) in front of VALENTINE's face to activate the facial recognition feature, for the purpose of attempting to unlock the device(s) in order to search the contents as authorized by this warrant.

## CONCLUSION

50.     Based on the foregoing facts, and in light of my training and experience described above, there is probable cause to believe that the **TARGET RESIDENCE** contains evidence of violations of federal criminal statutes, including 18 U.S.C. § 922(g)(3) – Possession of a firearm by a federal controlled substance user; 26 U.S.C. §§ 5861 – Possession Of A Short Barreled Rifle; and 18 U.S.C. § 922(a)(1)(A) – Engaging In The Business Of Dealing In Firearms Without A Federal Firearms License. Accordingly, I request a warrant to search the SUBJECT DEVICES for such evidence as set forth in Attachment B.

## REQUEST FOR SEALING

51.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, affidavit, and search warrant. I believe that public and/or premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness, may endanger the physical safety of a person, and may result in destruction or tampering with evidence and/or intimidation of potential witnesses.

Special Agent Matthew Rummel
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

HON. R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF MICHIGAN

Date: _____February 26, 2020_____

19

## ATTACHMENT A

### Property to be searched

The residence at 3011 Hendee Road, Jackson, Michigan 49201 ("**TARGET RESIDENCE**").

**TARGET RESIDENCE** is a one story, ranch style, single family home. It has yellow siding and a gray roof. There is an uncovered porch with white railings along the front of the structure. The structure is located on the south side of Hendee Road and the front door faces north. The numbers "3011" are affixed to the siding on the right side of the door. There is an attached garage.



## ATTACHMENT B

### Description of Items to Be Seized

1. All evidence, fruits, and/or instrumentalities of violations of Title 18 United States Code, § 922(g) (Possession of a firearm by a prohibited person), Title 26 U.S.C. §§ 5861 – Possession Of A Short Barreled Rifle and 18 U.S.C. § 922(a)(1)(A) – Engaging In The Business Of Dealing In Firearms Without A Federal Firearms License; including:

    a. Firearms, firearm magazines, and ammunition;

    b. Any items which tend to identify the person(s) in control, possession, or ownership of the property that is the subject of this warrant or the related properties identified in the affidavit (which is incorporated by reference), including but not limited to canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, bank statements, identification cards and documents, airline tickets and related travel documents, bank books, checks and check registers, and public storage facilities receipts;

    c. All evidence concerning the acquisition, possession, and/or sale of firearms;

d. All evidence concerning the possession, manufacture, sale, or use of firearms

e. All electronic devices and electronic storage media – including cellular telephones (e.g., Apple iPhones, etc.), tablets (e.g., iPads), computers, thumb drives, and other similar devices and/or storage media – that could store records or other information identified in this attachment.  These items may be seized and searched off-site, including with computer-assisted scans of the entire medium, for records or other information identified in this attachment, and they may be held for a reasonable period of time to determine whether they contain data within the purview of this warrant;

2. For any electronic devices or electronic storage media whose seizure is otherwise authorized by this warrant, and any electronic device and electronic storage media that contains or in which is stored records or information that is otherwise called for by this warrant:

a. Evidence of user attribution showing who used or owned each respective cell phone at the time the things described in this warrant were created, edited, or deleted, such as for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

      b.  Passwords, encryption keys, and other access devices that may be

          necessary to access each respective cell phone; and

      c.  Contextual information necessary to understand the evidence

          described in this attachment, all of which constitute evidence and/or

          instrumentalities of the violations described above.

As used above, the terms "records" and "information" include the content of all call logs, contact lists, contact identities and location information, text messages, emails (including those sent, received, deleted, and drafted), instant messages, photographs, videos, audio files, voice messages, electronic calendars, stored GPS location data, internet usage information (including browser history, web page logs, and search terms entered by the user), social media account activity, use of any mapping software, and use of any other applications.  The terms also include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

In the event law enforcement is unable to unlock any such electronic device, this warrant authorizes law enforcement to press VALENTINE's fingers (including thumbs) to the fingerprint sensor(s) on any such electronic devices seized pursuant to this warrant and/or to hold the device(s) up to VALENTINE's face for the

purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

| | AUSA: | Blake Hatlem | Telephone: | (313) 226-9613 |
|---|---|---|---|---|
| AO 93 (Rev. 11/13) Search and Seizure Warrant | Special Agent: | Matthew Rummel, ATF | Telephone: | (313) 202-3450 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>3011 HENDEE, JACKSON, MICHIGAN 49201<br>(More fully described in Attachment A) | )<br>)<br>)<br>)<br>)<br>)   Case No. | Case: 2:20-mc-50313 - 1<br>Judge: Goldsmith, Mark A.<br>Filed: 02-26-2020 At 04:03 PM<br>IN RE: SEALED MATTER (CMC) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

**YOU ARE COMMANDED** to execute this warrant on or before     March 11, 2020 _____     *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     February 26, 2020    4:00 pm _____

City and state:     Detroit, MI _____     Hon. R. Steven Whalen,  U. S. Magistrate Judge
*Judge's signature*
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*